| Cox v Kerr |
|:---:|
| 2024 NY Slip Op 30936(U) |
| March 19, 2024 |
| Supreme Court, Kings County |
| Docket Number: Index No. 518088/2018 |
| Judge: Consuelo Mallafre Melendez |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

At an IAS Term, Part 15 of the Supreme Court of the State of NY, held in and for the County of Kings, at the Courthouse, at 360 Adams Street, Brooklyn, New York, on the 19th day of March 2024.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS

-----------------------------------------------------------------------------X

NYESHA N. COX, as the Administrator for the Estate of GEORGIE A. BARNEY, deceased,

        Plaintiff,

    -against-

SHELLINE C. KERR, F.N.P., KATHLEEN EDOUARD, M.D., MARIE F. SCHMIDT, M.D., NWOSU NGOFA, M.D., RATESH KHILLAN, M.D., MIRELA SAM, M.D., SREEDEVI RAMAKRISHNAIAH, M.D., MOHAMED MANSOUR, M.D., WILLIAM TURSI, M.D., MADHVI RANA, M.D., THOMAS J. FORLENZA, M.D., LUCIA PALLADINO, M.D., AZZA ELEMAM, M.D., KEITH DIAZ, M.D., INTERFAITH MEDICAL CENTER AND RICHMOND UNIVERSITY MEDICAL CENTER,

        Defendants.

-----------------------------------------------------------------------------X

**DECISION & ORDER**

Index No. 518088/2018
Mo. Seq. 3, 4, & 5

**HON. CONSUELO MALLAFRE MELENDEZ, J.S.C**.

Recitation, as required by CPLR §2219 [a], of the papers considered in the review:
NYSCEF #s: Seq. 3: 120 – 122, 124 – 148
             Seq. 4: 149 – 152, 153 – 176, 183 – 184, 185, 186
             Seq. 5: 177 – 178, 179, 180, 181 – 182

Defendants Mirela Sam, M.D., and Azza Elemam, M.D. move for an order granting summary judgment in their favor dismissing the complaint pursuant to CPLR §3212 (Seq. No. 3). Plaintiff does not oppose the motions of Mirela Sam, M.D., and Azza Elemam, M.D (Seq. No. 3).

Defendants Shelline C. Kerr, F.N.P., Kathleen Edouard, M.D., Marie F. Schmidt, M.D., Sreedevi Ramakrishnaiah, M.D., and Nwosu Ngofa, M.D., and Interfaith Medical Center move for an order granting summary judgment in their favor dismissing the complaint pursuant to

1

[* 1]

CPLR §3212 (Seq. No. 4). Plaintiff opposes the motion of Interfaith Medical Center, Shelline C. Kerr, F.N.P, and Kathleen Edouard, M.D., but does not oppose that branch of the motion seeking summary judgment in favor of Marie F. Schmidt, M.D., Sreedevi Ramakrishnaiah, M.D., and Nwosu Ngofa, M.D.

Defendants William Tursi, M.D., Madhvi Rana, M.D., Thomas J. Forlenza, M.D., Lucia Palladino, M.D., Keith Diaz, M.D., and Richmond University Medical Center move for an order granting summary judgment in their favor dismissing the complaint as to these defendants pursuant to CPLR §3212 (Seq. No. 5). No opposition was submitted in response to the motion of William Tursi, M.D., Madhvi Rana, M.D., Thomas J. Forlenza, M.D., Lucia Palladino, M.D., Keith Diaz, M.D., and Richmond University Medical Center (Seq. No. 5).

As a preliminary matter, referring to movants' argument that as Plaintiff did not timely file the Affirmation in Opposition to this motion it should not be considered, the court excuses the untimeliness of the Affirmation in Opposition to this motion. The untimely submission has not prejudiced the movants, and if Plaintiff would have requested a further adjournment to file opposition, the court would have granted it.

This action is brought by Nyesha N. Cox, Plaintiff-administrator, on behalf of Georgie A. Barney ("Mr. Barney," deceased) for alleged acts of malpractice by defendants associated with Interfaith Medical Center. Mr. Barney was treated by defendants Shelline C. Kerr, F.N.P. ("Nurse Kerr"), and Kathleen Edouard, M.D. ("Dr. Edouard") at defendant-facility Interfaith Medical Center ("IMC") on or about August 20, 2016, and on or about August 25, 2016 to August 26, 2016.

Plaintiff alleges that movants Nurse Kerr, Dr. Edouard, and Interfaith Medical Center were negligent in failing to properly formulate a complete differential diagnosis in view of Mr. Barney's complaints of constipation, lower back pain, and leg cramping; in negligently

[* 2]

discharging Mr. Barney without performing a complete work-up in view of his complaints; in failing to order tests such as an abdominal x-ray, hematology, chemistry, HIV (human immunodeficiency virus) testing, and abdominal CT; in failing to call for consults such as gastroenterology; in negligently attributing Mr. Barney's back pain to a disc bulge; in failing to obtain Mr. Barney's complete medical and social history; in failing to take heed of Mr. Barney's medical and social history; in failing to take into account Mr. Barney's sexual orientation as part of his medical history; in failing to recommend to Mr. Barney testing for HIV; and in failing to admit Mr. Barney for treatment and observation. Plaintiff claims that as a result of Defendants' negligent acts and omissions, Mr. Barney died on September 28, 2016 due to the complications arising from the treatment rendered while under the care of Nurse Kerr, Dr. Edouard, and Interfaith Medical Center.

Plaintiff also asserts claims for negligent hiring and lack of informed consent, which are also the subject of this summary judgment motion.

Defendants now move for summary judgment, contending that their experts' testimony demonstrates that their treatment of the decedent was within the standard of care, and it could not have been the cause of his injuries and wrongful death, and that plaintiff has not sufficiently rebutted their contention to create a triable issue of fact.

On August 20, 2016, at 4:48am, Mr. Georgie A. Barney presented to the Emergency Room ("ER") at Interfaith Medical Center with "severe back pains that shoot down to my legs causing to cramp up (sic). Have not used the bathroom in 2 days." Mr. Barney was assigned an ESI Triage Level of 4 by Geosenelle Cayo, R.N. at 5:50 a.m., who noted chief complaint of "lower back pain x 1 week associated with leg cramping-patient also c[omplains] o[f] constipation. He denied p[ast] m[edical] h[istory]." His temperature was normal at 97.1°F and

his blood pressure was 151/88. Mr. Barney told Nurse Cayo that he had previously tested Negative for HIV, and he declined an HIV test during his August 20, 2016 ER visit.

Mr. Barney was seen at around 7:25am by Defendant Shelline C. Kerr F.N.P. ("Nurse Kerr"). Nurse Kerr authored an ED Physician Documentation. Mr. Barney's stated complaint was "back pain, cramps and bathroom problems." Mr. Barney denied any past medical history. Under the heading History of Present Illness, Nurse Kerr wrote that Mr. Barney denied nausea, vomiting, diarrhea, chest pain and paresthesia. Nurse Kerr performed a physical examination and noted that Mr. Barney's neck had a full range of motion and was non-tender. There were no abnormal findings regarding the patient's neck, including the lymph nodes. Nurse Kerr's assessment was "Lower back pain ... patient has problems sitting erect, tenderness on palpation to lower back, r[ange] o[f] m[otion] limited, back symmetrical no swelling, no redness." Nurse Kerr also noted that none of Mr. Barney's organs were enlarged, his abdomen was non-tender and soft, and the bowel sounds were normal.

Nurse Kerr ordered a CT scan of the lumbar spine and pain management medications, including Toradol, a nonsteroidal anti-inflammatory medication, and Robax, a muscle relaxant. The CT scan revealed a "[m]ild concentric disc bulge at L5-S1," and ruled out stenosis, nerve root impingement and an aortic dissection. Nurse Kerr informed Mr. Barney of the results of the CT scan, recommended that he include more fiber and water in his diet, and advised him to take a laxative if his bowel movement did not return. Mr. Barney was given a prescription for Mobic, a nonsteroidal anti-inflammatory drug. It was noted that an HIV test was not done as he had declined to take one. Mr. Barney was given instructions to follow-up with his primary care physician but to return to the ER in an emergency, and Mr. Barney said that he understood these instructions. Mr. Barney was discharged home on August 20, 2016, at 1:29pm.

4

[* 4]

Consistent with the substance of the other notes in the record, Nurse Kerr wrote an addendum note six days later, which documented the patient's complaint of lower back pain radiating to hips and thighs for one week worsening prior to visit (9/10 on pain scale), and an inability to move bowels as usual for two days. Nurse Kerr testified that she was not aware of Mr. Barney's sexual orientation, and she did not ask him because the inquiry was not related to his care and would not have altered her treatment of Mr. Barney during the August 20, 2016 ER presentation.

On August 25, 2016, at 11:51pm, Mr. Barney arrived at Interfaith Medical Center for emergency medical care. At 12:06am on August 26, 2016, Daphne Collier, R.N., noted the following, "I am having chest pressure since couple of hours and getting wors[e]. Patient stated that he did not have a BM since last Friday. [D]enies vomiting." Mr. Barney was assigned an ESI Triage Level of 3. His blood pressure was elevated at 189/106. Nurse Collier had an EKG performed, which showed a normal sinus rhythm, and his temperature was normal at 98.9°F. Mr. Barney told Nurse Collier that he had previously tested Negative for HIV, and he also declined an HIV test during his visit on August 26, 2016.

Mr. Barney was seen by Kathleen Edouard, M.D. ("Dr. Edouard") on August 26, 2016, at 12:20am. Dr. Edouard authored an ED Physician Documentation that noted Mr. Barney's complaints of non-radiating "pain involving all chest area for a few days" and constipation. The chest pain was reproducible by deep breathing, meaning the pain was the same when the patient breathed. Dr. Edouard noted that Mr. Barney did not feel bloated and had no abdominal pain. Dr. Edouard asked Mr. Barney about his past medical history and Mr. Barney told Dr. Edouard that he did not have HIV or AIDS.

Dr. Edouard performed a physical examination and noted that Mr. Barney's neck had a full range of motion and was non-tender. She also noted that none of Mr. Barney's organs were

5

[* 5]

enlarged, and his abdomen was non-tender and soft, and the bowel sounds were normal. At 1:00 a.m., Rose Dieuveuille Jean Jacques, RN wrote that Mr. Barney was stable and had no complaints of nausea or vomiting but that he said his abdominal pain persisted. Nurse Dieuveuille wrote at 1:30 a.m. that blood work, chest x-ray, and pain medicine were tolerated, and the patient was awaiting reevaluation. She did not mention abdominal pain.

Dr. Edouard's plan of care included electrocardiogram (ECG); x-ray of the chest; blood work consisting of complete blood count (CBC), comprehensive metabolic panel (CMP), and troponin level due to Mr. Barney's complaints of chest pain. Dr. Edouard ordered an abdominal x-ray, lactulose, and a fleet enema for constipation. Dr. Edouard ordered the urinalysis; urine toxicology screen; and urine microscopic examination to see if there were any illicit drugs involved in the presentation, as is done with any patient who presents with chest or abdominal pain, and not as a result of any aspect of the patient's presentation or history.

At 3:00 a.m., Dr. Edouard reviewed the laboratory results. She noted that the abdominal x-ray showed moderate gaseous distention of multiple large bowel loops and moderate amount of stool involving the colon. She also noted that the chest x-ray was "normal," and the ECG showed left ventricular hypertrophy. Further, she noted three complaints: chest wall pain, constipation; and abdominal pain. The presenting symptoms confirmed that the patient did not have an acute infection. Mr. Barney's Blood Urea Nitrogen was normal at 14mg/dL. Mr. Barney's Creatinine was normal at 0.7mg/dL. The abdominal x-ray showed no evidence of small bowel obstruction, moderate gaseous distention of multiple large bowel loops, and a moderate amount of stool involving the colon. The chest x-ray was normal.

At 4:00 a.m., Dr. Edouard saw Mr. Barney and wrote that he had a bowel movement and felt much better. Dr. Edouard reviewed the results of the CBC and urinalysis at the time of discharge. Mr. Barney's CBC showed an elevated white blood count (WBC) of 14.2 (normal 4.5-

6

11); decreased red blood cell count (RBC) of 3.80 (normal 4.5-5.9); decreased hemoglobin of 11.7 (normal 13.5-17.5); decreased hematocrit of 35.5 (normal 41-53); and low platelet count of 104 (normal 130-400). The CMP showed elevated alkaline phosphatase of 121 (normal 32-91); and elevated aspartate aminotransferase of 64 (normal 15-41). The troponin level was not elevated.

Nurse Dieuveuille wrote at 4:00 a.m. that the patient stated that he moved his bowels a tiny bit after receiving his medications, but she did not mention abdominal pain. She noted that Mr. Barney was encouraged to drink plenty of water as per the doctor's advice, and that the patient verbalized his understanding.

At the time of discharge, Mr. Barney's blood pressure was 162/98. Dr. Edouard testified that this was a significant decrease from the initial presentation and further outpatient testing could be done to determine if the patient needed long-term treatment for his blood pressure. The hospital record notes that Mr. Barney declined to be tested for HIV. Dr. Edouard ruled out the pain as cardiac and prescribed Acetaminophen and Miralax with further workup to be done on an outpatient basis. Mr. Barney was discharged home on August 26, 2016 at 4:26 a.m. in stable condition with instructions to follow up at the Bishop Walker Clinic.

Mr. Barney returned to Interfaith Medical Center for emergency care later on August 26, 2016 at 8:11pm, where he wrote in his Emergency Medicine Patient Questionnaire Form, "Can't use the bathroom for a week bleeding came to the E.R. last night by ambulance." Mr. Barney was received in the ER on August 26, 2016 at 8:16 p.m. with his chief complaint being "blood in stool". The triage nurse, Keisandra Griffith, R.N., wrote "p[atient]t seen yesterday for abd[ominal] pain & constipation, tx and dx. [Patien]t states today the pain has returned and now he is having blood in stool. [Patien]t sent home with polyethylene gycol and RA tylenol. denies hx." His temperature was 99.8°F and his blood pressure was 157/109. For the fourth time, Mr.

[* 7]

Barney advised that he had been tested for HIV and was negative. For at least the third time, Mr. Barney declined to be tested for HIV. Mr. Barney was assigned an ESI Triage Level of 4.

Mr. Barney was seen by an ER doctor on August 26, 2016 at 8:45 p.m. The ER physician wrote "36 year old who presents with a complaint of generalized abdominal pain and constipation for the past week. Was actually seen in the er 2 times before this past week. first time had mostly back pain and had a ct of the spine, which showed a disc bulge. seen yesterday for mostly abdominal pain, which he thought was related to constipation. Xray showed moderate stool. [Patien]t had several laxatives and an enema but only brown water came out. pain continues today and now feels it going up into his chest. sob and splinting noted with breathing. no fever or chills noted[.]"

On August 27, 2016 at 2:07 a.m., Mr. Barney was admitted to Interfaith Medical Center. A surgical consult took place on August 27, 2016 at 2:13 a.m. and generalized lymphadenopathy was noted. The patient remained at Interfaith Medical Center until September 3, 2016, when he transferred to Richmond University Medical Center. On September 28, 2016, Mr. Barney expired with diffuse large B cell lymphoma ("DLBCL") noted as the preliminary cause of death. No claims are asserted as to this admission to defendant Interfaith Medical Center.

Generally, "[i]n determining a motion for summary judgment, the court must view the evidence in the light most favorable to the nonmoving party." *Stukas v. Streiter*, 83 A.D.3d 18, 23 [2nd Dept. 2011]. "Thus, in moving for summary judgment, a physician defendant must establish, prima facie, 'either that there was no departure or that any departure was not a proximate cause of the plaintiff's injuries.' " *Hutchinson v. New York City Health and Hosps. Corp.*, 172 A.D.3d 1037, 1039 [2d Dept. 2019], citing *Lesniak v. Stockholm Obstetrics & Gynecological Servs., P.C.*, 132 A.D.3d 959, 960 [2d Dept. 2015].

[* 8]

"In a medical malpractice action, a plaintiff, in opposition to a defendant physician's summary judgment motion, must submit evidentiary facts or materials to rebut the prima facie showing by the defendant physician that he was not negligent in treating plaintiff so as to demonstrate the existence of a triable issue of fact." *Stukas v. Streiter*, 83 A.D.3d 18, 23 [2nd Dept. 2011]. "Expert testimony is necessary to prove a deviation from accepted standards of medical care and to establish proximate cause [internal citations omitted]." *Navarro v. Ortiz*, 203 A.D.3d 834, 836 [2d Dept. 2022]. "When experts offer conflicting opinions, a credibility question is presented requiring a jury's resolution [internal citations omitted]." *Stewart v. North Shore University Hospital at Syosset*, 204 A.D.3d 858, 860 [2d Dept. 2022] citing *Russell v. Garafalo*, 189 A.D.3d 1100, 1102, [2d Dept. 2020]. "Any conflicts in the testimony merely raise an issue of fact for the factfinder to resolve." *Palmiero v. Luchs*, 202 A.D.3d 989, 992 [2d Dept 2022], citing *Lavi v. NYU Hosps. Ctr.,* 133 A.D.3d 830, 832 [2d Dept. 2015]. However, "expert opinions that are conclusory, speculative, or unsupported by the record are insufficient to raise a triable issue of fact [internal citations omitted]." *Wagner v. Parker*, 172 A.D.3d 954, 966 [2d Dept. 2019].

In support of their motion seeking summary judgment on behalf of Nurse Kerr, Dr. Edouard, and Interfaith Medical Center, defendants submit an expert affirmation from Andy S. Jagoda, M.D., a physician board certified in Internal Medicine and Emergency Medicine and a Diplomate of the National Board of Medicine Examiners. Dr. Jagoda received a medical degree from Georgetown University School of Medicine and performed an internship in Internal Medicine at Bethesda Naval Hospital, where he later became the General Medical Officer. Dr. Jagoda performed a Residency at the Georgetown/George Washington University Hospital Combined Training Program in Emergency Medicine. Dr. Jagoda is Chair Emeritus, Department of Emergency Medicine and Chief Academic Officer, Mount Sinai Emergency Medicine System.

[* 9]

Dr. Jagoda held the position of System Chair of Emergency Medicine for the Mount Sinai Health System and was Chair of the Department of Emergency Medicine at the Icahn School of Medicine at Mount Sinai, where he is also a Tenured Professor. Based on his education, training, and experience, Dr. Jagoda opines that the care provided by the defendants Kerr, Edouard, and Interfaith Medical Center during the August 20, 2016 and August 25-26, 2016 Emergency Department presentations was within and even exceeded the relevant standard of care in their treatment of the decedent.

Dr. Jagoda opines that the decedent was properly and completely worked-up by Nurse Kerr, Dr. Edouard, and IMC during the August 20, 2016 and August 25-26, 2016 Emergency Department presentations. Dr. Jagoda opines that proper diagnoses were made, complaints were properly addressed, discharge was appropriate, all necessary tests were performed, consults were not needed, and necessary medical and social history was obtained. Dr. Jagoda opines that Decedent's sexual orientation had no bearing on the care provided, HIV testing was offered and declined, and there was no basis to admit the Decedent to the facility.

As to Nurse Kerr, Dr. Jagoda states that defendant Kerr testified that she was not aware of Mr. Barney's sexual orientation and that had she known Mr. Barney was homosexual, it would not have altered the care she provided. Dr. Jagoda opines that this is proper and correct, and to do otherwise would have constituted a deviation. Mr. Barney told the nurse that he had been previously tested for HIV and that his results were negative. Dr. Jagoda opines that because Mr. Barney declined an HIV test during his August 20, 2016 ED visit, it was proper for Nurse Kerr to not inquire further about Mr. Barney's HIV status.

Dr. Jagoda goes on to opine that it was also proper for Nurse Kerr to assign an ESI Triage Level of 4 to the patient, given his complaints. The defendant's expert opines that Nurse Kerr performed a complete and adequate physical examination, authored an ED Physician

10

Documentation, where she properly noted Mr. Barney's Stated Complaint of "back pain, cramps and bathroom problems," and noted that Mr. Barney denied nausea, vomiting, diarrhea, chest pain and paresthesia. Dr. Jagoda noted that Mr. Barney's neck had a full range of motion and was non-tender, no abnormal findings regarding the patient's neck were palpated, including the lymph nodes. Dr. Jagoda indicates that as part of Nurse Kerr's physical examination of the patient, she noted that none of Mr. Barney's organs were enlarged, and his abdomen was nontender and soft, and the bowel sounds were normal, and that the decedent was appropriately asked and denied any past medical history, which would have included any history of kidney problems. Dr. Jagoda opines that Nurse Kerr conducted a thorough and necessary physical examination of the patient.

Dr. Jagoda opines that Nurse Kerr's assessment of "Lower back pain ... patient has problems sitting erect, tenderness on palpation to lower back, r[ange] o[f] m[otion] limited, back symmetrical. no swelling, no redness" was correct. Dr. Jagoda opines that Nurse Kerr implemented a proper plan of care of pain management and a CT scan of the lumbar spine. Dr. Jagoda opines that it was an appropriate plan for Nurse Kerr to order Toradol, a nonsteroidal anti-inflammatory medication, and Robax, a muscle relaxant for pain, and a CT scan of the lumbar spine, given the patient's complaints and presentation. Dr. Jagoda opines that it would have been inappropriate to order an abdominal x-ray at this time because there were no signs of an abdominal mass or related complaints, there were no complaints that gave rise to the need for a gastroenterology consult, and decedent did not have a fever and his other vital signs were not indicative of a need for hematology or chemistry testing as alleged. Dr. Jagoda opines that Nurse Kerr was correct to rely upon the reading of the CT scan and attributing the patient's complaint to those findings.

11

Dr. Jagoda opines that Nurse Kerr properly ruled out an aortic dissection as a cause for the patient's complaints. Dr. Jagoda addresses the allegations that additional lab work was necessary, and opines that this claim is absurd because the complaints were back pain with cramps and bathroom problems and the constipation was of only two days duration and Mr. Barney denied nausea, vomiting, chest pain, diarrhea, and paresthesia, so there was no basis for lab work at the time of the August 20th presentation. Dr. Jagoda opines that the patient was correctly directed to follow up with his primary care physician or to return to Interfaith Medical Center if his condition worsened. Dr. Jagoda opines that Nurse Kerr correctly advised Mr. Barney of the results of the CT scan, to take a laxative if his bowel movement does not return, and to include more fiber and water in his diet. Dr. Jagoda opines that none of Mr. Barney's vital signs, complaints, results of his physical examination, results of the CT scan, medical history, or social history warranted his being admitted to the hospital. In sum, Dr. Jagoda opines, to a reasonable degree of medical certainty, that the decedent was properly worked-up, treated, and discharged by Nurse Kerr.

As to Dr. Edouard, Dr. Jagoda opines that Dr Edouard was correct in assessing the decedent's chest wall pain and constipation, and the suitable plan of care was pain medication, and x-rays of the abdomen and chest. The defendant's expert opines that it was appropriate practice for Dr. Edouard to have asked Mr. Barney about his medical history, as he was the source of information concerning the timing and the duration of his complaints, and Mr. Barney reiterated to Dr. Edouard that he did not have HIV or AIDS. As before, Dr. Jagoda opines that performing HIV testing without the patient's consent would have been improper.

Dr. Edouard recorded as part of her examination that none of Mr. Barney's organs were enlarged, his abdomen was non-tender and soft, the bowel sounds were normal, and she noted

12

that Mr. Barney's neck was non-tender and had a full range of motion. Dr. Jagoda opines that these were thorough and adequate physical examinations of the decedent.

Dr. Jagoda goes on to opine that it was good practice for Dr. Edouard to order an electrocardiogram and a chest x-ray because the patient presented with complaints of chest pain, and an abdominal x-ray because Mr. Barney was complaining of constipation. Dr. Jagoda opines that it was proper for Dr. Edouard to order blood work CBC with differential because infection was a consideration; order a Troponin level test due to the complaint of chest pain; order lactulose and a fleet enema for constipation; and order a urine toxicology screen to see if there were any illicit drugs involved in the presentation. The defendant's expert opines that these tests are ordered generally for patients who present with chest pain without risk factors for cardiac disease, and not as a result of any aspect of the patient's presentation or history. Dr. Jagoda opines that this is absolutely appropriate given the presentation and to rule out a possible etiology for the complaints.

Dr. Jagoda noted that Dr. Edouard testified that after being informed of the patient's persistent pain, she would have seen the patient and asked how he was feeling, assessed the degree of pain, and awaited the results of the studies ordered. Mr. Barney, when questioned by Dr. Edouard, denied abdominal pain, constipation, diarrhea, nausea, and vomiting. She noted that there was stool in the rectum and as a result there was no need for further testing. Dr. Jagoda opines that this was appropriate for the situation because the abdominal x-ray was more than sufficient to determine the nature of the abdominal complaints, showed no evidence of small bowel obstruction or moderate gaseous distention of multiple large bowel loops, and showed a moderate amount of stool involving the colon and a normal chest x-ray.

Dr. Jagoda opines that Dr. Edouard's review of the patient's laboratory results, the CBC, and the urinalysis at the time of discharge all constituted good practice. Dr. Jagoda opines that

13

[* 13]

Dr. Edouard properly ruled out the pain as cardiac and appropriately discharged the patient in stable condition with prescriptions for Acetaminophen and Miralax to address the complaints of constipation, with instructions to follow-up at the Bishop Walker Clinic and further workup to be done on an outpatient basis.

Dr. Jagoda opines that the allegation that a hematology consult be sought is absurd. Dr. Jagoda explains that there were no findings that were indicative of any blood disorders; both Nurse Kerr and Dr. Edouard testified that their physical examinations did not reveal lymphadenopathy; and Mr. Barney's vital signs did not give any indication of infections.

Dr. Jagoda went on to conclude that "it is my opinion that Nurse Kerr, Dr. Edouard, IMC acted within the standard of care in all of their care and treatment of Mr. Barney, and that the care and treatment provided by them caused no harm in this matter. There is simply no causal connection between the treatment provided by Nurse Kerr, Dr. Edouard, and IMC and any of claimed injuries to Plaintiff-Decedent."

In sum, Defendants through their submissions establish their prima facie entitlement to summary judgment. "[W]here the moving defendant addressed the elements of both departure and proximate cause, the plaintiff was required to raise a triable issue of fact as to both of those elements." *DiMitri v Monsouri,* 302 AD2d 420 (2d Dept 2003).

Plaintiff initially argues that Dr. Jagoda fails to explain his qualifications regarding human immunodeficiency virus infection (HIV), acquired immunodeficiency syndrome (AIDS), and various forms of lymphomas and their signs, symptoms, diagnosis, treatment, and complications. The court has reviewed the qualifications of Dr. Jagoda and finds that this expert is qualified to opine as to good and accepted standards of care applicable in this case. Furthermore, plaintiff offers not one opinion discussing the role decedent's HIV positive status

played in the departures claims against the moving defendants. It is also noted that the patient refused an HIV test a number of times during the time in question.

In response to defendants' expert's opinions, Plaintiff submits the affirmation from expert Ira Mehlman, M.D. ("Dr. Mehlman"), certified in Internal Medicine and Emergency Medicine. Dr. Mehlman is duly licensed to practice medicine in the State of New York. Dr. Mehlman is board certified in Internal Medicine, has been board certified in Emergency Medicine, and has been a director of emergency departments for over 20 years. Dr. Mehlman obtained his medical degree from Cornell University and thereafter completed his residency in Internal Medicine and in Endocrinology and Metabolism at Walter Reed Army Medical Center in Washington, D.C. Thereafter, Dr. Mehlman worked as an attending emergency room physician at various hospitals in the State of New York, Maryland, Washington D.C., and New Jersey. Dr. Mehlman is a Fellow of both the American College of Emergency Physicians (FACEP) and the American College of Physicians (FACP) in acknowledgement of his practice, scholarship, and leadership/teaching in the fields of Emergency Medicine and Internal Medicine, having obtained the rank of Associate Professor of Medicine and published in peer reviewed medical literature. Dr. Mehlman opines, to a reasonable degree of medical certainty, that defendants Nurse Kerr and Dr. Edouard departed from good and accepted standards of care that existed in 2016.

As to Nurse Kerr, Dr. Mehlman opines that the defendant departed from good and accepted standards of care in failing to include lymphoma in her differential diagnosis. Dr. Mehlman points out that Mr. Barney complained of severe back pain that shoots down to his legs causing cramps, and explains that some patients with lymphoma experience lower back pain radiating to the hips and thighs, which is believed to be caused by expanding lymph nodes pressing on nerves. Dr. Mehlman points out that Nurse Kerr testified that her examination of Mr. Barney's lymph nodes was confined to the neck area "as part of the examination of the neck."

15

[* 15]

Further, Dr. Mehlman indicates that the decedent's blood pressure was elevated at triage, which is more significant in this case because he had no history of hypertension. Dr. Mehlman explains that due to autonomic changes resulting from lymphoma, some patients may have elevated blood pressure and may represent a paraneoplastic manifestation. No medical explanation is offered for the term "paraneoplastic manifestation." As to these and the opinions of Dr. Mehlman which are discussed below, the court finds that the expert's opinions are of a general and conclusory nature relating to signs and symptoms of lymphoma. Dr. Mehlman does not opine as to how the failure to diagnose lymphoma or diffuse large B Cell lymphoma constitutes a departure from the standard of care in light of the patient's complaints during these visits and the medical evidence submitted herein.

Dr. Mehlman opines that the defendant Kerr departed from good and accepted standards of care in failing to order tests such as an abdominal x-ray, hematology, chemistry, and abdominal CT. In Nurse Kerr's deposition, she testified that an abdominal mass would have been in her differential diagnosis but "would be in the lower on the scale at that time or presentation." However, Dr. Mehlman does not state how an abdominal x-ray is diagnostic of the decedent's diffuse large B Cell lymphoma ("DLBCL") or lymphoma; or considers that an abdominal x-ray was ordered by Dr. Edouard in the subsequent ER visit and that it was negative for an abdominal mass. Dr. Mehlman also does not consider that Dr. Edouard ordered blood work while the patient was under her care a few days after Nurse Kerr saw him. Dr. Mehlman also points out that the Decedent complained of inability to use the bathroom in three days, opining that fluid may build up if the lymphoma involves lymphatic tissue within the abdomen, bowel or stomach, causing swelling near the intestines, potentially leading to sensations of constipation, abdominal pressure, and pain. However, Dr. Mehlman's opinion that while a mild bulging disc may have contributed to his lower back pain, it cannot be reasonably blamed for his other complaints, is conclusory.

16

Further, Dr. Mehlman does not comment that the patient's other complaints were consistent with, and confirmed to be, constipation. Similarly, Dr. Mehlman does not support his conclusory opinion that a proper and complete differential diagnosis in this case must include lymphoma.

Next, Dr. Mehlman opines that Nurse Kerr departed from accepted standards of medical practice in failing to order blood tests that could show abnormalities in patients with lymphoma, such as a complete blood count (CBC) that may show low hemoglobin, and a hematocrit, low red blood cell (RBC) count, low platelet count, and elevated white blood count (WBC). Dr. Mehlman opines that chemistry may show elevated values suggestive of kidney and/or liver involvement, and radiological studies, including CT scans, PET scans and x-ray, may show lymphadenopathy and any extra nodal involvement. Although Dr. Mehlman opines that all these tests are necessary to rule out or diagnose lymphoma and should have been ordered by Nurse Kerr, he fails to provide an opinion on how neglecting to order these tests presents a departure from the standard of care in this case given the patient's clinical presentation and the specific complaints he made to Nurse Kerr. Dr. Mehlman fails to account for the fact that Dr. Edouard ordered a CBC. The expert does not comment on how those test results relate to the claimed misdiagnosis of lymphoma by either or both treating defendants.

Lastly, Dr. Mehlman opines that the departures by Nurse Kerr were substantial factors in causing the progression of Mr. Barney's DLBCL and death from DLBCL on September 28, 2016. Dr. Mehlman opines that the departures by Nurse Kerr on August 20, 2016, caused a one-week delay in the patient's treatment such that by the time Dr. Edouard saw the decedent in the ER on August 26, 2016, his symptoms included chest pain and abdominal pain, indicating a significant progression of his DLBCL with other organ involvement and leading to the decedent's injuries and wrongful death. Again, this opinion is conclusory especially in light of

17

[* 17]

the conclusory nature of the opinions relating to Nurse Kerr's departures in the evaluation and treatment of the patient.

As to Dr. Edouard, Dr. Mehlman opines that the defendant departed from good and accepted standards of care that existed in 2016 by failing to formulate a proper and complete differential diagnosis of Mr. Barney. Dr. Mehlman opines that a full differential diagnosis of the decedent would have included lymphoma because pain in the chest area, coughing, and/or breathlessness is associated with lymphoma if it affects the chest wall area. However, Dr. Mehlman does not expound his opinions beyond conclusory statements. The hospital record indicates that Dr. Edouard evaluated Mr. Barney's complaints of chest pain by ordering an electrocardiogram and a chest x-ray because of these complaints. Dr. Edouard also ordered a CBC with differential to consider infection, and ordered a Troponin level test due to the complaint of chest pain.

In a conclusory and vague manner, Dr. Mehlman points out that the decedent's complete blood count (CBC) showed low hemoglobin and hematocrit, low red blood cell (RBC) count, low platelet count, and elevated white blood count (WBC), and he opines that the abnormal labs "are all consistent with lymphoma or a similar medical condition." However, that these lab results are consistent with another "similar medical condition" is not at issue herein. Significantly, other than in a conclusory manner, Dr. Mehlman does not state how the assessment of these lab results constituted a departure of the standard of care. Dr. Mehlman also notes that the patient's CMP showed elevated values suggestive of kidney and/or liver involvement, but he does not discuss how this is relevant to any departure claimed in this case. Once again, no opinions are given indicating that the standard of care was breached in the evaluation and interpretation of these lab results in light of the patient's complaints and presenting symptoms.

18

With regards to decedent's complaint of not having a bowel movement for a week, Dr. Mehlman opines in a conclusory manner that this complaint required lymphoma to be included as a differential diagnosis. In an attempt to support this opinion, the expert states that lymphoma involves lymphatic tissue within the abdomen, bowel or stomach, fluid may build up causing swelling near the intestines, potentially leading to sensations of constipation, abdominal pressure, and pain. Additionally, Dr. Mehlman states that the decedent's abdominal x-ray showed moderate gaseous distention of multiple large bowel loops and moderate amount of stool involving the colon, and explains that gaseous distention results from bacterial growth in the stagnant contents of an obstructed bowel, which can be dangerous factor in the entire process of partial mechanical intestinal obstruction. In spite of this explanation, Dr. Mehlman does not comment how this finding called for including lymphoma as a differential diagnosis. Nor does the expert opine how or in what manner Dr. Edouard deviated from the standard of care in failing to diagnose lymphoma in light of these findings and the patient's complaint of constipation.

Dr. Mehlman's opinions are also retrospective, based on hindsight and are non-specific. While Dr. Mehlman opines that "additional radiological studies, including CT scans and PET scans may show lymphadenopathy and any extra nodal involvement, so all of these tests are necessary to rule out or diagnose lymphoma", he fails to opine whether Mr. Barney's symptoms at the time that Nurse Kerr treated the patient on August 20, 2016 reflected a need for these tests. As mentioned above, Dr. Mehlman fails to opine why these tests were indicated in this case.

Lastly, Dr. Mehlman opines that the departures by Dr. Edouard were substantial factors in causing the progression of Mr. Barney's DLBCL and death from DLBCL because they caused a further delay, such that by the time the decedent returned to the Emergency Department later on August 26, 2016, he had already developed bleeding, indicating a significant progression of his DLBCL with other organ involvement, and leading to his alleged injuries, and death. However,

19

given the conclusory nature of the expert's opinions on liability, his opinions on proximate cause are similarly conclusory. In addition, Dr. Mehlman insufficiently attributes the progression of the decedent's condition to the delay between Dr. Edouard's discharge of the decedent on August 26, 2016 at 4:26 a.m. and his admission beginning on August 26, 2015 at 8:11 p.m., to establish proximate cause. Further, Dr. Mehlman ignores Interfaith records that indicate that the patient was not diagnosed with lymphoma for another few days after he was admitted complaining of blood in his stool; and after signing himself out against medical advice (AMA) on August 30th. During this admission, a rapid HIV test was ordered and positive results were obtained on August 27th. An inguinal biopsy was performed on August 30, 2016; those results became available after Mr. Barney had left the hospital AMA.

In summary, based upon the submissions of the parties and the affirmation of the experts, while movants established their prima facie establishment for summary judgment, plaintiff fails to raise an issue of fact as to both liability and proximate cause. The affirmation of their expert is conclusory, based on hindsight and not based on the evidence. "General and conclusory allegations of medical malpractice... unsupported by competent evidence tending to establish the essential elements of medical malpractice, are insufficient to defeat a defendant physician's summary judgment motion." *Coffey v. Mansouri*, 209 A.D.3d 714 [2nd Dept. 2022] citing *Myers v. Ferrara*, 56 A.D.3d 78, 84 [2nd Dept. 2008]. Accordingly, the court must grant summary judgment to Nurse Kerr and Dr. Edouard.

As summary judgment is granted to Nurse Kerr and Dr. Edouard, summary judgment is also granted to Interfaith Medical Center as to claims for its vicarious liability for the acts and/or omissions of the movants. Further, as no claims were raised as to any departures directly attributable to Interfaith Medical Center, any and all such claims, if any, are similarly dismissed and summary judgment is granted.

20

[* 20]

Defendant Interfaith seeks dismissal of Plaintiff's negligent hiring claim. As no opposition was submitted, this cause of action is dismissed.

Defendants also seek dismissal of Plaintiff's lack of informed consent claim.

"To succeed in a medical malpractice cause of action premised on lack of informed consent, a plaintiff must demonstrate that (1) the practitioner failed to disclose the risks, benefits and alternatives to the procedure or treatment that a reasonable practitioner would have disclosed and (2) a reasonable person in the plaintiff's position, fully informed, would have elected not to undergo the procedure or treatment (see Public Health Law § 2805-d [1], [3]). Expert medical testimony is required to prove the insufficiency of the information disclosed to the plaintiff (CPLR 4401-a)." *Orphan v. Pilnik*, 15 N.Y.3d 907, 908 [2010].

Plaintiff has not submitted opposition to this claim; further, Plaintiff's lack of informed consent claim does not apply in this case. Accordingly, the cause of action for lack of informed consent is dismissed without opposition.

Therefore, it is ORDERED that:

The motion of Defendants Mirela Sam, M.D., and Azza Elemam, M.D., is GRANTED, without opposition (Seq. No. 3); and

The branch of the motion on behalf of Defendants Shelline C. Kerr, F.N.P., Kathleen Edouard, M.D. is GRANTED (Seq. No. 4); and

The branch of the motion on behalf of Defendants Marie F. Schmidt, M.D., Sreedevi Ramakrishnaiah, M.D., and Nwosu Ngofa, M.D., and Interfaith Medical Center, is GRANTED, without opposition (Seq. No. 4); and

The motion of Defendants William Tursi, M.D., Madhvi Rana, M.D., Thomas J. Forlenza, M.D., Lucia Palladino, M.D., Keith Diaz, M.D., and Richmond University Medical Center is GRANTED, without opposition (Seq. No. 5).

Accordingly, the action is DISMISSED in its entirety.

21

[* 21]

The clerk is directed to enter judgment pursuant to CPLR § 3212 in favor of Mirela Sam, M.D., Azza Elemam, M.D., Shelline C. Kerr, F.N.P., Kathleen Edouard, M.D., Marie F. Schmidt, M.D., Sreedevi Ramakrishnaiah, M.D., Nwosu Ngofa, M.D., William Tursi, M.D., Madhvi Rana, M.D., Thomas J. Forlenza, M.D., Lucia Palladino, M.D., Keith Diaz, M.D., Interfaith Medical Center, and Richmond University Medical Center.

This constitutes the decision and order of the court.[1]

**ENTER.**

_____
**Hon. Consuelo Mallafre Melendez**
**J.S.C.**

---

[1] This decision was drafted with the assistance of legal intern Jessica Ramsawak, Brooklyn Law School.

22